UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                          CASE NO.

**TLC MEDICAL GROUP, INC.**                                            **04-15739**
                                                                                                   Section "B"

INVOLUNTARY DEBTOR                                               CHAPTER 11

### REASONS FOR ORDER

This matter came before the Court on October 1, 2004 as a hearing on the Petition for Involuntary Relief under Chapter 11 of the Bankruptcy Code ("Petition") filed on July 29, 2004 by Elaine Davis ("Petitioning Creditor") against TLC Medical Group, Inc. ("TLC"). The two issues before the Court are: (i) whether the Petitioning Creditor has met her burden under § 303 of the Bankruptcy Code ("§ 303"), (ii) and if so, whether the Court should abstain as provided in § 305 of the Code ("§ 305"). For the reasons expressed in the following opinion, the Court concludes that the Petitioning Creditor has not met her burden of proof and denies her petition without reaching the issue of abstention.

Background

The Petitioning Creditor together with Venessia Black and Karen Blanks acquired all interest of TLC in March of 2000.[1] The three shareholders were actively involved in the daily operation of the business; the Petitioning Creditor in particular served as TLC's financial officer.[2] The Petitioning Creditor ceased her involvement in the daily affairs of TLC as of July 31, 2001.[3] Some time prior to that Black and Blanks initiated a lawsuit on behalf of TLC and themselves against the

---

[1] Testimony of Elaine Davis.

[2] *Id.*

[3] *Id.*

Petitioning Creditor in Civil District Court for the Parish of Orleans ("state court lawsuit").[4] After a hearing on July 31, 2001, the Civil District Court granted a Temporary Restraining Order ("TRO") against the Petitioning Creditor and ordered that neither of the three shareholders receive payments from TLC pending resolution of the matter.[5] Although a second hearing was set for August 9, 2001, the matter was not resolved, and is still pending.

On July 29, 2004, the Petitioning Creditor filed the involuntary petition for relief under Chapter 11 of the Bankruptcy Code against TLC.[6] She testified that her purpose for filing was to ensure proper management of TLC and full payment of all of its outstanding debts, including arrearage to the Internal Revenue Service ("IRS"), which has caused a federal tax lien to be placed on her property.[7]

The debtor answered the involuntary complaint, asserting that the Petitioning Creditor is not an eligible creditor and that the debtor is paying its debts as they become due. On October 1, 2004, the court held a hearing on the petition for involuntary relief. At the conclusion of the hearing, the Petitioning Creditor requested that a status conference be held pending efforts to resolve certain issues between the parties. A status conference was scheduled on November 9, 2004, at which the parties again requested that a further status conference be scheduled to permit the parties to resolve matters. At the status conference held December 1, 2004, the parties advised the Court that the matter had been resolved and that a motion to dismiss would be filed. Counsel were directed to file appropriate pleadings within ten days. Thereafter, nothing was filed in the case, and a show cause

---

[4] Exhibit 9.

[5] *Id.*

[6] Docket # 1, entered on July 29, 2004.

[7] Exhibit 8.

order was entered ordering the parties to show cause why the case should not be dismissed. A hearing on the show cause order was held on February 16, 2005, attended only by counsel for the Petitioning Creditor who informed the court that he had been unable to resolve the matter with counsel for the Debtor. The court accordingly took the Petition for Involuntary Relief under advisement.

## Analysis

Section 303 addresses the filing of involuntary bankruptcy cases. In particular, § 303(b)(2) states that where a juridical person has less than twelve creditors, a single creditor whose claim aggregates at least $11,625 can file an involuntary petition against that juridical person. Although no evidence was presented on this issue, the Petitioning Creditor testified that at the time she filed the petition TLC had approximately ten creditors, including the state of Louisiana, IRS, and Medicare. The alleged amount of her claim is approximately $252,000, thereby entitling her to seek relief under § 303. The Petitioning Creditor also testified that she was only representing herself and no other creditor of TLC.

The main question is whether the Petitioning Creditor has met her burden under § 303(b)(1), which prohibits the holder of a claim that is subject to a bona fide dispute from commencing an involuntary case. There are three components to the Petitioning Creditor's claim: 1) loans that she made to TLC, 2) owner's compensation for the period that she was involved with the daily business of TLC, and 3) owners's compensation for the period following her disassociation from TLC. The Petitioning Creditor has the initial burden of establishing a *prima facie* case that neither of these

components is subject to a bona fide dispute.[8] The Court is not convinced that this burden has been met.

*1) Loans made by the Petitioning Creditor to TLC*

The Petitioning Creditor testified that she made various loans to TLC which were not paid. She offered proof of two such loans, one for $7,000 and one for $1,300.[9] The Petitioning Creditor also admitted, however, that she diverted a $10,000 payment to TLC by a vendor, of which she used approximately $2,000 to compensate herself for the loans owed to her. Venessia Black testified that the Petitioning Creditor diverted another payment to TLC in the amount of $24,000. Additionally Black alleged that the Petitioning Creditor wrote a number of checks to herself on TLC's account for amounts just under $1,000 so as to require only one signature, her own. Based on these alleged misappropriations, Black testified that to her knowledge and belief, TLC did not owe the Petitioning Creditor any money.

Although Black did not present any evidence to substantiate her accusations, the initial burden is not on her to prove that a bona fide dispute exists, but on the Petitioning Creditor to establish a *prima facie* case that it does not.[10] Once this showing is satisfied, the burden shifts to the debtor to show that a bona fide dispute exists.[11] Under the test adopted by the Fifth Circuit

---

[8] *In re Earl Sims,* 994 F.2d 210, 221 (5th Cir. 1993); *Collier on Bankruptcy*, ¶303.03[2][b][ii] (15th ed. 2004)(citing *In re Vortex Fishing Sys.*, 277 F.3d 1057 (9th Cir. 2002); *In re Reid*, 773 F.2d 945 (7th Cir. 1985)).

[9] Exhibit 1.

[10] *Collier on Bankruptcy*, ¶ 303.03[2][b][ii](citing *In re Gutfran*, 210 B.R. 672 (Bankr. D. Conn. 1998)).

[11] *Sims*, 994 F.2d at 221.

4

in *In re Sims*,[12] a claim is subject to a bona fide dispute when there is an objective basis for either a factual or a legal dispute as to the validity of the debt. Generally, the existence of pending litigation between the debtor and creditor does not make the claim subject *per se* to bona fide dispute.[13] A dispute as to a portion of a claim does not disqualify a creditor from filing an involuntary petition.[14]

The Court holds that in light of the testimony, and admission by the Petitioning Creditor, that she was repaid a portion, if not all, of the loans, insufficient undisputed indebtedness exists to support this component of Petitioning Creditor's claim. In addition, in view of the unresolved state court lawsuit, the gravamen of which is precisely the alleged conversion of corporate funds by the Petitioning Creditor, the Petitioning Creditor has not convinced the Court that there is insufficient basis to render her claim subject to a bona fide dispute. In fact, apart from remarks that her guilt has not been proved in state court, the Petitioning Creditor presented no evidence on that issue at all.

*2) Owner's Compensation for March, 2000- July, 2001*

The Petitioning Creditor testified that she was paid $19,750 less in owner's compensation than the other two shareholders for the period that she was actively involved with TLC's daily operations.[15] The Court notes, however, that there is some disparity both in the total amounts as well as individual distributions made to each shareholder which has not been satisfactorily explained. For example, the record presented by the Petitioning Creditor shows that on June 28,

---

[12] 994 F.2d 210 ( 5th Cir. 1993).

[13] *IBM Credit Corp. v. Compuhouse Sys., Inc.*, 179 B.R. 474 (W.D.Pa. 1995).

[14] 2 *Collier's on Bankruptcy*, para. 303.03[2][b], pg. 303-25.

[15] Exhibit 3.

2000 she received a payment of $3000 from TLC, while the other two shareholders received nothing on that day.[16] Similar discrepancies continue to exist between Venessia Black and Karen Blanks even after the Petitioning Creditor stopped receiving any owner's compensation but prior to her disassociation from TLC. For example, on November 21, 2000 Blanks received $1000 from TLC, while Black received nothing, but on December 1, 2000 Black received $100 from TLC, while Blanks received nothing.[17] Additionally, the total compensation Black received from TLC for the recorded period exceeds the total amount Blanks received, which also undermines the Petitioning Creditor's argument that each shareholder was supposed to receive the same amount of compensation. Although the Petitioning Creditor testified that each shareholder expected to receive one third of the total compensation and was equally involved in running TLC, the sporadic and uneven pattern of owners' compensation that the record reveals has not been explained to the Court's satisfaction. Thus, the Court finds that the Petitioning Creditor has not met her burden of proving that she had an undisputed claim sufficient under §303 because she was improperly compensated for the relevant period.

*3) Owner's Compensation after July, 2001*

The last component of the Petitioning Creditor's claim is that she received no owner's compensation after her disassociation from TLC, while the other two shareholders continued to be paid.[18] Although such payments were prohibited by the TRO issued by the Civil District Court, the TRO expired ten days after issuance, as neither of the parties petitioned the court to extend it. Additionally, it is not clear whether the prohibition applied to compensation that Black

---

[16] *Id.*

[17] *Id.*

[18] Exhibit 4.

6

and Blanks received as service providers, not owners of TLC. Black testified that both she and Blanks continued to be heavily involved in running TLC. The Court is satisfied that the payments the remaining shareholders received was compensation for services, not disguised owner's distribution. Because the Petitioning Creditor has not participated in the daily affairs of TLC since July of 2001, she is not entitled to any payments of that nature, and has failed to meet her burden of proving that she is owed owner's compensation.

## Conclusion

The Petitioning Creditor has not established a prima facie case that her claim is not subject to a bona fide dispute. Thus, she has is not entitled to file an involuntary petition in bankruptcy under § 303. A separate order will be entered accordingly.

New Orleans, Louisiana, March 4, 2005.

_____
Jerry A. Brown
U.S. Bankruptcy Judge